UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
RIAS TRADING S.A.,
                Plaintiff

v.

ASHRAF EL ATTAL, LOGISTICA LTD.,
LOGISTICA HOLDING LIMITED,
LOGISTICA HOLDING LTD. GENEVA
EGYPTIAN TRADERS CO., HISHAM EL ATTAL
and LOGISTICA MANAGEMENT LTD,

                Defendants
------------------------------------------------------X

VERIFIED COMPLAINT

09 CIV 10585
JUDGE WOOD



Plaintiff RIAS Trading S.A. ("RIAS") by its attorney Serhiy Hoshovsky, as and for its Complaint against the defendants, on knowledge as to itself and otherwise upon information and belief, alleges as follows:

### Nature of this action

1. The plaintiff seeks an ex parte attachment in aid of arbitration under NY CPLR 7502 and Rule 64 of Federal Rules of Civil Procedure. This is a maritime action involving claims for breach of maritime sales contract, seeking demurrage and cost, maritime insurance premium and freight for a cargo of wheat. The plaintiff asserts claim that corporate defendants are alter egos of each other and defendant Ashraf El Attal and his brother Hisham El Attal.

### Jurisdiction

2. This is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. This case thus falls under the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. 1333.

1

3. The Court also has federal question jurisdiction pursuant to 28 U.S.C. 1331 in that the action arises under the New York Convention on the Recognition and Enforcement of the Foreign Arbitral Awards, 9 U.S.C. 201 et. seq. and Federal Arbitration Act, 9 U.S.C. 1 et. seq.

## Parties

4. At all times herein mentioned, the plaintiff RIAS was and still is a Swiss corporation with offices located at Rue du Grand-Chene 6, 1003 Lausanne, Switzerland.

5. At all times herein mentioned, the defendants LOGISTICA HOLDING LIMITED and LOGISTICA HOLDING LTD. GENEVA, are or were foreign companies with addresses at 25 Rue Kleberg, CH-1201, Geneva, Switzerland and/or 86 Jermyn Street, London, SW1Y GAW, England.

6. Defendant LOGISTICA MANAGEMENT LTD was a foreign corporation doing business at the above address.

7. Defendant LOGISTICA HOLDING LIMITED is foreign business corporation authorized to do business in the State of New York.

8. Defendant LOGISTICA LTD., formerly an English corporation, was dissolved on August 28, 2007. Defendants at the material times continued to use this name for their business.

9. Defendant EGYPTIAN TRADERS CO., is an Egyptian corporation with addresses at Tower 1 Wataneya Complex, Smouha, Alexandria, Egypt.

10. Defendant EGYPTIAN TRADERS CO., is foreign business corporation authorized to do business in the State of New York.

11. Defendant ASHRAF EL ATTAL ("Attal") is an Egyptian national. Defendant Attal is the owner, chairman and chief executive officer of defendant Egyptian Traders Co. At all material times, defendant Attal owned, managed or controlled all corporate defendants. Defendant Attal was doing business through or by using names of corporate defendants. Corporate defendants are alter egos of defendant Attal. Defendant Attal used corporate defendants to commit fraud with respect to the plaintiff RIAS.

12. Defendant HISHAM EL ATTAL ("Hisham Attal") is an Egyptian national and brother of defendant Attal. Together with his brother Attal, defendant Hisham Attal is the owner, deputy chairman and deputy chief executive officer of defendant Egyptian Traders Co., and director of defendant Logistica Holding Ltd. At all material times, defendant Hisham Attal, together with his brother defendant Attal, owned, managed or controlled all corporate defendants and they were doing business through or by using names of corporate defendants. Corporate defendants are alter egos of defendant Hisham Attal. Defendant Hisham Attal used corporate defendants to commit fraud with respect to the plaintiff RIAS.

## FIRST CLAIM: FOR BREACH OF MARITIME SALES CONTRACT

13. On February 15, 2009, plaintiff RIAS and defendant Egyptian Traders Co., entered into a contract No. 1.189 to ship 60 000 metric tons, more or less 5% at Sellers' option, of Russian Wheat, crop 2008 ("Contract"). See Exhibit A.

14. The Contract did not provide for the goods to be fit for any particular purpose (human consumption, feedstuff, etc.).

3

15. The contract price was EURO 193.45 per metric ton, Cost and Freight Free Out one safe berth Safaga port – Egypt Red Sea.

16. The port of shipment (port of loading) was specified as Novorossiysk, Russia.

17. The port of destination (port of discharge) was Safaga Red Sea Egyptian port.

18. Payment for the shipment was to be made in net cash in Cairo, Egypt, at C.I.B. Counter, by SWIFT transfer, expenses buyers' account, within 2 banking days after presentation of shipping documents specified in the Contract.

19. Defendants claim that defendant Egyptian Traders Co. entered in a contract for further sale of the wheat shipped by plaintiff RIAS to General Agency for Supply Commodities ("GASC"), an agency of the Egyptian government. The alleged contract between defendant Egyptian Traders Co. and GASC was a result of a public tender declared by GASC for purchase of milling wheat intended for human consumption. The said contract was not on back-to-back terms with the Contract, in particular in terms of the quality specifications, description of wheat and its intended purpose of use; the said contract was unrelated to the Contract.

20. The alleged re-sale of the wheat shipped by RIAS took place without knowledge or consent of RIAS.

21. On April 15, 2009, plaintiff RIAS chartered a vessel M/V SEA BIRD to deliver the wheat as provided by the Contract. 56,740 metric tons of wheat were accordingly loaded onto the vessel and two Bills of Lading for 27,000 and 29,740 metric tons respectively were issued to this end. The Bills of Lading are attached as Exhibit B.

22. On or around April 30, 2009, plaintiff RIAS presented a full set of shipping documents set by the Contract to defendant Egyptian Traders Co. for making the payment in the amount of $10,976,353 for the wheat pursuant to the Contract. See Bundle of shipping documents appearing as Exhibit C.

23. Upon receipt of the shipping documents the defendant Egyptian Traders Co. accepted them and did not reject the wheat within reasonable time.

24. The wheat was delivered to the port of Safaga, Egypt on about May 9, 2009, in accordance with the terms of the Contract.

25. Despite the demand and in breach of the Contract, the defendant failed and refused to make the payment. See Exhibit E.

26. The defendant Attal who owned and controlled defendant Egyptian Traders Co., never intended to perform the Contract. Defendant Attal entered into the Contract with RIAS through Egyptian Traders Co., with a sole purpose to induce RIAS to make the shipment of wheat. Defendants Attal and Egyptian Traders Co., had a preconceived intent not to pay for the shipment. Defendants had never disclosed to RIAS that they intended to re-sell the wheat to GASC and that such wheat would be used for human consumption. Defendants then used GASC's rejection of the wheat as a pretext not to pay pursuant to the Contract.

27. In furtherance of defendants fraudulent scheme, defendant Attal and his alter ego defendants Egyptian Traders Co., Logistica Holding Limited and Logistica Holding Ltd. Geneva conspired and fabricated a claim that the wheat shipped by RIAS pursuant to the Contract was intended for GASC and human consumption.

28. The GASC allegedly rejected the wheat shipped by RIAS as being in non-conformity with quality specifications and/or descriptions and unfit for particular purpose set by the contract between defendants and GASC.

29. In furtherance of the fraudulent scheme, defendant Attal asserted fraudulent claims that the wheat shipped by RIAS was intended for the government of Egypt and that RIAS knowingly and intentionally failed to ship the wheat of agreed quality specifications.

30. By making their fraudulent allegations, defendants Attal, Egyptian Traders Co., Logistica Holding Limited and Logistica Holding Ltd. Geneva caused the Egyptian authorities to commence an investigation against RIAS for allegedly knowingly shipping inferior wheat to the government of Egypt.

31. On about May 13, 2009, allegedly as part of the investigation, the Egyptian authorities arrested the vessel SEABIRD and seized the wheat delivered by RIAS.

32. Defendant Attal was arrested on about August 5, 2009 by Egyptian authorities allegedly in connection with the criminal investigation commenced as a result of Attal's fraudulent allegations.

33. Defendant Attal was released on about October 9, 2009.

34. The vessel SEABIRD was released from the arrest on or around September 22, 2009.

35. The sole purpose of defendants' actions was to avoid paying for the wheat shipped by RIAS.

36. To mitigate the damages, RIAS was forced to re-sell the wheat to Cargill International S.A. at a substantially discounted price of $137.00 per metric ton

CIFFO one good safe Spanish Mediterranean port(s) / one or two berths. A copy of the re-sale contract is attached as Exhibit D.

37. As a result of defendants' actions, RIAS has sustained the following damages for which the defendants are liable pursuant to the Contract:

   a. $4,103,898.83 consisting of market damages calculated as difference between the price of the Contract 1.189 and price of the re-sale contract brought to the same delivery basis (CIFFO port of Safaga, Egypt);

   b. $2,326,630.81 consisting of hire dues under the time-charter for the vessel, bunker consumption, port disbursements, dues for transit of Suez Canal, expenses for hull cleaning, etc;

   c. $58,592.25 consisting of expenses for additional fumigation of the cargo;

   d. $2,000.00 consisting of expenses on additional inspection of the cargo quality;

   e. $1,095.00 consisting of frustrated expenses on legalization of documents;

   f. $130,000.00 in legal fees incurred by RIAS to release the vessel SEABIRD from the arrest, resolve the dispute with vessel owners and to mitigate the damages.

38. Despite repeated demands by RIAS, the defendants failed and refused to make the payment.

## SECOND CLAIM: ALTER EGO AND JOINT VENTURE

39. The plaintiff repeats herein the content of the paragraphs above.

40. At all times there existed such unity of ownership and control between defendants Attal, Hisham Attal, Egyptian Traders Co., Logistica Ltd, Logistica Holding

Limited, Logistica Management Ltd and Logistica Holding Ltd. Geneva, that no separation existed between them, and the corporate forms of such defendants were disregarded and they were used to conduct business of defendant Attal and defendant Egyptian Traders Co.

41. Defendants Egyptian Traders Co., Logistica Ltd, Logistica Holding Limited, Logistica Management Ltd and Logistica Holding Ltd. Geneva belong to a group of companies owned and controlled by defendant Attal and his brother defendant Hisham Attal.

42. Defendant Attal exercises complete control over the defendants Egyptian Traders Co., Logistica Ltd, Logistica Holding Limited, Logistica Management Ltd and Logistica Holding Ltd. Geneva.

43. At all relevant times, defendant Attal held positions of chief executive officer, chairman and director of defendants Egyptian Traders Co., Logistica Ltd, Logistica Holding Limited, Logistica Management Ltd and Logistica Holding Ltd. Geneva.

44. At all relevant times, defendant Attal's brother Hashim El Attal held positions of deputy chief executive officer, deputy chairman and director of defendants Egyptian Traders Co., Logistica Ltd, Logistica Holding Limited, Logistica Management Ltd and Logistica Holding Ltd. Geneva.

45. Defendant Attal exercised complete personal control over the business of defendants Egyptian Traders Co., Logistica Ltd, Logistica Holding Limited, Logistica Management Ltd and Logistica Holding Ltd. Geneva.

46. Defendant Attal personally controlled negotiations and performance of all business contracts of defendants Egyptian Traders Co., Logistica Ltd, Logistica Holding Limited, Logistica Management Ltd and Logistica Holding Ltd. Geneva.

47. Defendant Attal personally received and conducted communications, correspondence and emails with respect to the negotiations and performance of business contracts of defendants Egyptian Traders Co., Logistica Ltd, Logistica Holding Limited, Logistica Management Ltd and Logistica Holding Ltd. Geneva.

48. Defendant Attal personally controlled all financials of defendants Egyptian Traders Co., Logistica Ltd, Logistica Holding Limited, Logistica Management Ltd and Logistica Holding Ltd. Geneva.

49. Defendant Logistica Holding Limited regularly assumes liability for and guaranties performance of contracts by defendant Egyptian Traders Co., and vice versa.

50. Defendant Attal personally authorized all payments pursuant to the contracts of defendants Egyptian Traders Co., Logistica Ltd, Logistica Holding Limited, Logistica Management Ltd and Logistica Holding Ltd. Geneva.

51. Defendant Attal and corporate defendants claim that they all belong to "Attal Group" of companies owned and controlled by defendant Attal and his brother Hisham Attal.

52. Defendant Attal and corporate defendants interchangeably use names "Ashraf El Attal", "Egyptian Traders Co.", "Logistica Ltd", "Logistica Holding Limited", "Logistica Management Ltd" and "Logistica Holding Ltd. Geneva".

53. At all relevant times, defendants used for communications with RIAS and others emails with domain name "logisticaltd.com" even though the company Logistica Ltd., was dissolved in August of 2007.

54. Defendant Attal used for communications with RIAS and others his email belonging to Egyptian Traders Co., ashraf@egtraders.com regardless of whether he was acting as an officer for Egyptian Traders Co., Logistica Holding Limited or any other company.

55. Defendants Logistica Holding Limited and Logistica Holding Ltd. Geneva constitute the same entity.

56. Defendant Logistica Holding Limited was incorporated on June 21, 2002. Defendant Attal and his brother Hashim El Attal were directors of this company from June 27, 2002 to June 7, 2007 when both of them resigned.

57. After such alleged resignations, they were replaced by nominal directors Keatley Limited and Dhellin Marc Olivier.

58. However, despite such resignation, defendant Attal continued to control and be directly involved in the business of Logistica Holding Limited.

59. Defendant Attal determined the prices of all contracts of defendants Egyptian Traders Co., Logistica Ltd, Logistica Holding Limited and Logistica Holding Ltd. Geneva.

60. Defendant Attal personally benefited from the business of defendants Egyptian Traders Co., Logistica Ltd, Logistica Holding Limited and Logistica Holding Ltd. Geneva.

61. Defendant Logistica Holding Limited gives Egyptian Traders Co. website as its own.

62. Defendants Attal, Egyptian Traders Co., Logistica Ltd, Logistica Holding Limited, Logistica Management Ltd and Logistica Holding Ltd. Geneva use the same business addresses in London, Geneva and Alexandria.

63. Based on the foregoing, there is a commonality of control and management among the defendants Attal, Hisham Attal, Egyptian Traders Co., Logistica Ltd, Logistica Holding Limited, Logistica Management Ltd and Logistica Holding Ltd. Geneva centered on defendant Attal.

64. The defendants Attal, Hisham Attal, Egyptian Traders Co., Logistica Ltd, Logistica Holding Limited, Logistica Management Ltd and Logistica Holding Ltd. Geneva., do not operate at arms length.

65. There had been an intermingling of funds and property between and among the defendants Attal, Hisham Attal, Egyptian Traders Co., Logistica Ltd, Logistica Holding Limited, Logistica Management Ltd and Logistica Holding Ltd. Geneva.

66. Defendant Attal had used defendants Egyptian Traders Co., Logistica Ltd, Logistica Holding Limited, Logistica Management Ltd and Logistica Holding Ltd. Geneva., for his own purposes, including as agents for payments and obtaining maritime, insurance, banking, sales, procurement and other contracts.

67. Defendant Attal and other defendants disregarded corporate forms of other defendants.

68. Defendants Attal used defendants Egyptian Traders Co., Logistica Ltd, Logistica Holding Limited, Logistica Management Ltd and Logistica Holding Ltd. Geneva., to commit fraud.

69. Defendants Attal, Hisham Attal, Egyptian Traders Co., Logistica Ltd, Logistica Holding Limited, Logistica Management Ltd and Logistica Holding Ltd. Geneva., are alter egos of each other.

70. Defendants Egyptian Traders Co., Logistica Ltd, Logistica Holding Limited, Logistica Management Ltd and Logistica Holding Ltd. Geneva., are partners and joint venturers with respect to the Contract and claims based on the Contract.

## THIRD CLAIM: ATTACHMENT IN AID OF ARBITRATION

71. The plaintiff repeats herein the content of the paragraphs above.

72. On or around June 16, 2009, as provided in the Contract, plaintiff RIAS commenced an arbitration process in London in accordance with GAFTA arbitration rules. The arbitration is currently pending.

73. It is estimated that the plaintiff RIAS will be entitled to recover the following amounts in the arbitration proceeding:

   a. $4,103,898.83 consisting of market damages calculated as difference between the price of the Contract 1.189 and price of the re-sale contract brought to the same delivery basis (CIFFO port of Safaga, Egypt);

   b. $2,326,630.81 consisting of hire dues under the time-charter for the vessel, bunker consumption, port disbursements, dues for transit of Suez Canal, expenses for hull cleaning, etc;

   c. $58,592.25 consisting of expenses for additional fumigation of the cargo;

    d. $2,000.00 consisting of expenses on additional inspection of the cargo quality;

    e. $1,095.00 consisting of frustrated expenses on legalization of documents;

    f. $130,000.00 in legal fees incurred by RIAS to release the vessel SEABIRD from the arrest, resolve the dispute with vessel owners and to mitigate the damages.

74. There is no good faith defense that the defendants can assert in that arbitration proceeding. There is no basis for the defendants for non-payment pursuant to the Contract.

75. Plaintiff RIAS has demonstrated the likelihood of its success on the merits in the arbitration proceeding.

76. Plaintiff knows of no counterclaim of the defendants and plaintiff's claim exceeds all defendants' counterclaims.

77. Defendants' fraudulent actions and blatant disregard of their obligations pursuant to the Contract demonstrate that they will do everything possible to avoid satisfying any award that might be entered in London arbitration in favor of the plaintiff.

78. Defendants do not conduct and have no intent of conducting business in the State of New York. Their registration with the New York State Secretary of State is a sham intended to secret the assets and place them beyond the reach of their creditors, including plaintiff RIAS. The sole purpose of such registration was to insulate themselves from the Admiralty Rule B attachment.

79. Any award obtained by plaintiff RIAS in London arbitration will have to be enforced in Egypt, a country where it will be very difficult if not impossible to enforce such an award.

80. Therefore, the award to which plaintiff RIAS will be entitled as a result of the arbitration may be rendered ineffectual without the attachment in aid of arbitration.

WHEREFORE, the plaintiff demands a judgment against defendants:

a. that process in due form of law according to the practice of this Court in admiralty and maritime jurisdiction be issued against the defendants, citing the defendants to appear and answer under oath all matters alleged, failing which a default judgment will be taken against them;

b. that the assets of the defendants up to and including the amount of $6,622,216.89 may be restrained and attached, including but not limited to any cash, funds, wire transfers, accounts, letters of credit and other assets belonging to, due or for the benefit of the said defendants;

c. that the judgment in the amount of $6,622,216.89 shall be entered in favor of plaintiff and against defendants Attal, Hisham Attal, Egyptian Traders Co., Logistica Ltd, Logistica Holding Limited, Logistica Management Ltd and Logistica Geneva., jointly and severally;

d. that this Court retain jurisdiction of this matter for purpose of any subsequent proceeding relating to attachment, arbitration proceeding, confirmation of the arbitration award and enforcement as my be necessary; and

    e.  for such other and further relief as this Court may deem just and proper.

Dated: December 29, 2009
       New York NY

HOSHOVSKY LAW FIRM

Serhiy Hoshovsky (SH-4189)
Attorney for plaintiff
33 West 19th Street, Ste 307
New York NY 10011
(646) 619 1123

## ATTORNEY VERIFICATION

Serhiy Hoshovsky, an attorney admitted to practice before this Court affirms the truth of the following under penalty of perjury:

1. I am an attorney for the plaintiff RIAS Trading S.A. ("RIAS") and I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and grounds for my belief are communications, information and documents provided by my client.

3. This verification is made by an attorney and not by the plaintiff because the plaintiff is a foreign entity and none of its officers are presently within this district.

Dated: December 29, 2009

_____
Serhiy Hoshovsky